

_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| KAMRAN MIREMADI | * | |
| and | * | Case No. 04-37259-RAG |
| HOLY JULIE MIREMADI a/k/a HOLLY JULE HARTER, | * | (Chapter 7) |
| | * | |
| Debtors | * | |
| * * * * * * | * * * * * * * | |
| WACHOVIA BANK, NATIONAL ASSOCIATION f/k/a FIRST UNION NATIONAL BANK | * | |
| | * | |
| Plaintiff | * | |
| vs. | * | Adversary Proceeding No. 05-1255 |
| KAMRAN MIREMADI, et al., | * | |
| Defendants | * | |
| * * * * * * * | * * * * * * | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT AS TO MOTION OF DEBTORS FOR AWARD OF ATTORNEY'S
<u>FEES AND COSTS PURSUANT TO 11 U.S.C. § 523(d)</u>**

Before the Court for consideration is the Motion of Debtors for Award of Attorney's Fees and Costs Pursuant to 11 U.S.C. § 523(d)[1] (Motion for Attorney's Fees, Dkt. No. 12) filed by Kamran and Holly Jule Miremadi, Defendants in this Adversary Proceeding.  The Respondent, Wachovia Bank, N.A. f/k/a First Union National Bank, Plaintiff in this suit, filed an Opposition to the Motion (Opposition, Dkt. No. 13).  Debtors filed a Reply to the Opposition and simultaneously moved for summary judgment (Dkt. No. 14).  Wachovia filed a Reply to Debtors' motion for summary judgment and in the same paper cross-moved for summary judgment in its favor (Dkt. No. 17).  A hearing was held on the Motion for Attorney's Fees and the cross summary judgment motions thereon on October 25, 2006.  There are no material facts in dispute and entry of summary judgment is otherwise appropriate.  Accordingly, for the reasons explained below summary judgment for the attorney's fees and costs sought by Debtors will be entered.

**Material Facts Not in Dispute**

Debtors filed their Voluntary Petition for Relief under Chapter 7 on December 3, 2004. On December 6, 2004, the Clerk issued the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines (Notice).  Per the Notice, the deadline for filing complaints to object to Debtors' discharge and/or to have a particular debt declared nondischargeable was fixed as March 15, 2005[2].  Neither Wachovia or its predecessor in interest, First Union National Bank,

---

[1] Hereafter, all statutory citations are to the Bankruptcy Code, found at Title 11 of the United States Code, unless otherwise noted.

[2] The Notice merely implements the deadlines mandated by Fed. R. Bankr. P. 4004(a) and 4007(c).

were listed as creditors by the Debtors in their Schedules[3]. Therefore, it cannot be presumed that Wachovia received the original Notice through the mail in the ordinary course of events. Nevertheless, Wachovia did learn of the Debtors' bankruptcy filing fairly quickly and, in the words of its counsel, "began their [sic] investigation on January 4, 2005". Opposition at 2.

The underlying relationship between the Debtors and Wachovia began in 2001. On June 25, 2001, Mr. Miremadi borrowed $149,000 from Wachovia (the Loan). The Loan was memorialized by a written loan agreement and was secured by a Deed of Trust, executed by both Debtors, against the real estate located at 11775 Bragden Rd., Clarksville, Maryland 21209 (the Real Estate)[4]. Motion for Attorney's Fees at 2-3.

At the time the Loan was consummated, the Debtors owned the Real Estate. By Deed dated October 25, 2001, the Miremadis conveyed the Real Estate to Miremadi LLLP, a Maryland limited liability limited partnership. The Deed was duly recorded in the Land Records of Howard County at Liber 5776, Folio 0001. The Real Estate was later foreclosed upon by another lender and title was thereafter conveyed to a Mr. and Mrs. Abate by a deed dated November 14, 2003. This deed was also duly recorded in the Land Records of Howard County. Motion for Attorney's Fees at 5.

As the foregoing factual recitation makes plain, by the time the Miremadis filed their bankruptcy case in December 2004, they no longer owned the Real Estate. Hence, they did not

---

[3] Notwithstanding its assertion that it was a creditor of the Miremadis, Wachovia never filed a proof of claim. This case apparently does have assets available for distribution. See Trustee's Notice of Assets filed on October 4, 2005 (Dkt. No. 35 in the main case).

[4] A footnote in the Motion for Attorney's Fees points out that the Real Estate's address is incorrectly identified in the Deed of Trust and that the actual street name is Bragden Wood.

list the Real Estate on their Schedule "A", Real Property Owned by Debtor. Their decision in that regard was entirely correct.

On March 14, 2005, Wachovia filed a Complaint to Determine Dischargeability of Debt (Complaint, Dkt. No. 1) against the Debtors thereby initiating this Adversary Proceeding. The Complaint sets forth a summary of the state of the record of the bankruptcy case to that point including Debtors' commencement of the case, their failure to list Wachovia as a creditor, and the loan transaction described above. However, paragraph 6 of the Complaint alleges, "As is evident from the Defendant's [sic] statement of financial affairs filed herein, the representation of the Defendants that they had an ownership interest in, and ability to encumber, the real estate purportedly given to Plaintiff as collateral security, was false." Claiming to have relied upon that alleged "false" representation in making the loan, Wachovia sought to have the resulting indebtedness declared non-dischargeable pursuant to Section 523(a)(2)(A)[5] on the grounds that it was incurred by "false pretenses, a false representation, or actual fraud". Complaint at 3.

Not surprisingly, Debtors promptly filed a Motion to Dismiss (Dkt. No. 4). Debtors explained that they did own the Real Estate at the time of the settlement, that it was subsequently conveyed to Miramedi, LLLP subject to Wachovia's interest, and was thereafter foreclosed

---

[5] Section 523(a)(2)(A) provides:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

upon. Wachovia chose not to grapple head-on with the Debtors' assertions, opting instead to file its Motion to Dismiss (Dkt. No. 10). In that paper, Wachovia distilled its position to a single paragraph that read, "After review of the affidavit, and other filings by the Debtors/Defendants, Plaintiff has questions regarding whether it would prevail in this matter." An Order Granting Wachovia's Motion to Dismiss was entered on July 20, 2005 and the Adversary Proceeding was closed on December 19, 2005. Debtors received their discharge on August 17, 2006.

On September 20, 2006, Debtors filed the Motion for Attorney's Fees. Debtors contended that because Wachovia's request for determination of discharge was not "substantially justified" they should be permitted to recover from Wachovia the attorney's fees and costs they incurred in defending the action under the plain language of Section 523(d)[6]. Debtors' counsel, Jeremy S. Friedberg, provided an affidavit and time records showing total attorney's fees of $8,237 incurred in defense of the Complaint and for related services.

Wachovia filed its Opposition on October 2, 2006. Wachovia acknowledged that it had actual knowledge of the bankruptcy filing by January 4, 2005. On that day, its representative contacted the Trustee in this case, "inquiring about the real estate pledged to secure Wachovia's debt"[7]. Opposition at 2. Wachovia also contacted Debtors' counsel's office to make the same

---

[6] Section 523(d) provides:
(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

[7] Wachovia asserts it did not have an opportunity to examine the Debtors at their Section 341 meeting of creditors. However, the meeting of creditors was commenced, but apparently not

5

inquiry.  Wachovia was told by the individual it communicated with that they were not "aware" of the Real Estate.

Wachovia goes on to describe the balance of its efforts to determine why the Real Estate was not listed on the Debtors' Schedule "A". Wachovia acknowledges that the Trustee's representative investigated the Debtors' real estate interests and concluded Debtors no longer owned the Real Estate at the time they filed bankruptcy because it had been purchased by the Abates. The Trustee's representative also told Wachovia that the Debtors were the previous owners before the Abates' purchase.  Opposition at 3.  Stated differently, prior to filing the Complaint, Wachovia admits being told by the Trustee's office that Debtors owned the Real Estate before it was purchased by the Abates and that because of the sale the Debtors did not own it when they filed bankruptcy.

Wachovia further acknowledges ordering a title search of the Real Estate on February 10, 2005.  However, Wachovia did not include a copy of that search nor did it reveal its findings in the papers filed on its behalf with respect to this dispute.  Wachovia sums up the narrative of its investigation by asserting it was "still unable to obtain explanations" by February 23, 2005 and it therefore filed the Complaint on the next to last possible day to do so[8].  Opposition at 3. The essence of the Complaint is the allegation that Debtors committed fraud when they represented they owned the Real Estate at the time of settlement.  In view of the totality of the

---

concluded, on January 14, 2005, about eleven days after Wachovia learned of the bankruptcy filing.

[8] It is likely that a good faith showing of cause for an extension of the looming deadline would have netted Wachovia a reasonable period of time to complete any investigation it was pursuing.

circumstances, the Court concludes that Wachovia's course of conduct did run afoul of Section 523(d) and therefore an award of reasonable attorney's fees and costs is entirely proper in this case. The way Wachovia handled this matter is an example of "fire, ready, aim" conduct at its worst.

### **Analysis**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 157, and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

Fed. R. Civ. P. 56(c), made applicable by Fed. R Bankr. P. 7056, sets forth the procedure to be followed when a motion for summary judgment is made. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A material fact is one that might affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248-49, 106 S.Ct. 2505. In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of papers attached to such affidavits. Fed. R. Civ. P. 56(e). Permissible inferences to be drawn from the underlying facts are viewed in the light most favorable to the nonmoving party, but if "the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party," summary judgment may be granted. *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990).

The moving party bears the burden of producing evidence to demonstrate the absence of any genuine issue of material fact. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Once a motion for summary judgment is made and supported, the nonmoving party "may not rest on the mere allegations or denials of [that] party's motion, but ⋯ must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It must show that there is sufficient evidence from which a reasonable factfinder could find its favor. *Id.* The material facts, principally contained in the documents filed in the Court's docket, are not in dispute, and the applicable law may be determined.[9] For the reasons stated below, Debtors are entitled to judgment as a matter of law.

Section 523(a) identifies those debts that are excepted from the general discharge of Section 727(b). Generally, Section 523(a) reflects legislative policy choices regarding certain types of obligations and whether they should pass through bankruptcy unaffected by the discharge. Creditors proceeding in good faith for the purpose of legitimately excepting a

---

[9] Debtors' did not provide an affidavit made on their personal knowledge attesting to the underlying prebankruptcy history of this matter. While Fed. R. Civ. P. 56(a) does not expressly require such an affidavit, the presence of one would have aided the decisional process. Nevertheless, Wachovia provided an employee affidavit in opposition to the Motion for Attorney's Fees that does not dispute and, to the contrary, confirms the crucial points. The balance of the facts can be effectively gleaned from the papers on file and referred to in this Opinion.

qualifying debt from a debtor's discharge may do so without trepidation. However, the provisions of Section 523(a)(2) have been subject to creditor misuse particularly in the consumer bankruptcy arena. Hence, Section 523(d) was enacted as a part of the Reform Act of 1978 to provide a hedge against creditor abuse.

Section 523(d) fashions strong medicine for the creditor owed a consumer debt who seeks to have it declared nondischargeable under Section 523(a)(2) without "substantial justification". The statute reads:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

Debtors assert that before the Complaint was filed Wachovia knew, or reasonably should have known, that (a) the Real Estate was owned by the Debtors when the original loan was consummated (and hence no fraudulent misrepresentation of a kind asserted in the Complaint could have occurred) and (b) the Debtors no longer owned the Real Estate at the time they filed bankruptcy. In its defense, Wachovia contends that (a) its investigation was conducted in "good faith", (b) it voluntary dismissed the Complaint and (c) the litigation was not brought to wrongfully extract a settlement or to force the reaffirmation of a debt otherwise dischargeable.

In considering whether to grant an award under Section 523(d), the first question is whether the creditor was unsuccessful in suing for the discharge of a consumer debt. *In re Williams*, 224 B.R. 523, 529 (2nd Cir. BAP 1998); *In re Walker*, 299 B.R. 141, 144 (S.D. W.Va. 2003). It is undisputed that is precisely what happened here. The burden then shifts to the

creditor to establish either that its position was substantially justified or that 'special circumstances' excuse its conduct. *Id. See also*, *In re Napier*, 205 B.R. 900, 908 (Bankr. N.D. Ill. 1997); *In re Stahl*, 222 B.R. 497, 504-505 (Bankr. W.D. N.C. 1998).

*Williams*, *supra*, provides a thorough explication of how to apply Section 523(d). In that case, the creditor claimed the debt was nondischargeable under Section 523(a)(2)(A). The underlying facts established, however, that the debtor did not incur the debt in a manner prohibited by that Section. The creditor's pre-filing investigation was limited to only a review of its own internal account records and the debtor's credit bureau report. It ignored the debtor's evidence explaining how and why the debt was incurred, all of which was provided before trial, and presented no evidence of its own at trial. Moreover, the creditor did not attend the Section 341 meeting nor did it seek to otherwise examine the debtor under oath. *Williams*, 224 B.R. at 531.

The Bankruptcy Appellate Panel for the 2nd Circuit affirmed the decision of the trial court awarding fees and costs under Section 523(d). The court adopted a three-part test to measure substantial justification: (1) whether there is a reasonable basis in law for the theory the claim propounds, (2) whether there is a reasonable basis in truth for the facts alleged, and (3) whether there is a reasonable connection between the facts alleged and the legal theory advanced. *Id.* Finally, the court opined that the determination of substantial justification should be made in light of the totality of the circumstances. *Id.*

The court also held that in order for a creditor to avoid liability, its pursuit of the claim must be "substantially justified" at all times. A creditor cannot continue to prosecute a dischageability claim of a consumer debt under Section 523(a)(2) "after it knows or should have

known it could not prevail". *Id.* at 530. Once that line is crossed, there is no reasonable basis for the claim and the action cannot be substantially justified. *Id.* This Court agrees with the foregoing analysis.

Applying these standards to the undisputed facts of this case, the conclusion is inescapable that Wachovia's Complaint was not substantially justified and hence should never have been filed. The Complaint's core allegation is that because Debtors did not list the Real Estate in their Schedule "A", they defrauded Wachovia at the time of the settlement when they represented they owned, and therefore could pledge, the Real Estate as security for the Loan. However, the truth of the Debtors representation that they owned the Real Estate at the time of the settlement is not, and never has been, in legitimate dispute.

Either in its own files, or those of its agents, Wachovia should have had available all relevant settlement documentation including documentation that evidenced how the Real Estate was titled. And if it did not have that documentation, it would have been readily accessible from public records. Likewise, any documentation memorializing the subsequent transfers of the Real Estate would have been readily obtainable from the same source. Even if Wachovia had none of the settlement documents and could not secure them from public records, its pre-filing investigation expressly confirmed that the Debtors *were the previous owners of the Real Estate* but no longer owned it at the time they filed bankruptcy as the Abates had purchased it on April 2, 2004. See Opposition at 3. Whatever confusion Wachovia may have suffered from at the beginning of the case, there should have been no doubt whatsoever before the Complaint was filed that the Debtors owned the Real Estate when they settled on the Loan in 2001. Thus, the essential fact question purportedly raised by the Complaint was definitively answered in the

Debtors' favor before the Complaint was filed and Wachovia has identified no reasonable basis for alleging otherwise.  Whether Wachovia conducted any part of its pre-filing investigation in good faith, it knew, or should have known, before the Complaint was filed that the Debtors owned the Real Estate when the settlement occurred and hence could not have been guilty of actual fraud.

Wachovia also claims it should not be assessed attorney's fees and costs because it did not file the litigation with the hope of extracting a settlement or the reaffirmation of the particular debt.  Wachovia also dismissed the Complaint shortly after its filing.  The legislative history does  support the conclusion that Section 523(d) was enacted in part to prevent the use of less than meritorious dischargeability claims to achieve unwarranted settlements.  See H.R. Rep. No. 95-595 at 131 (1977), Reprinted in 1978 U.S.C.C.A.N. 5963, 6092.  Nevertheless, the express statutory language does not require an examination of the creditor's motivations.  Under the statute as written, the inquiry is limited to the standards applied above.   For the same reason, Wachovia's early dismissal does not cure the statutory breach.  Wachovia did not move to dismiss the Complaint until after the Debtors filed their Motion to Dismiss and were forced to incur fees and expenses in order to do so.  Moreover, Wachovia has not identified any special circumstances that excuse its conduct.  Because the Debtors were left with no choice but to mount a defense, and had no liability whatsoever to Wachovia, they should recover their attorney's fees and costs incurred as a result. The Court finds that the sum sought by the Debtors is completely reasonable and justified by the Affidavit of Jeremy S. Friedberg Concerning Attorneys' Fees and Costs (Exh. 8 to Motion for Attorney's Fees) and the supporting

documentation filed therewith. By separate order, the Court will award the Debtors attorney's fees in the amount of $8,237.00.

It is, therefore, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that summary judgment is **granted** in favor of Debtors-Defendants on the Motion of Debtors for Award of Attorneys' Fees and Costs Pursuant to 11 U.S.C. § 523(d).

cc: Jeremy S. Friedberg, Counsel for Debtors-Defendants
Leitess Leitess Friedberg + Fedder PC
One Corporate Center
10451 Mill Run Circle, Suite 1000
Owings Mills, MD 21117

Dwayne Louis Garrett, Counsel for Plaintiff
Law Offices of Dwayne L. Garrett, P.C.
15206 Dino Drive
Burtonsville, MD 20866

**-END OF ORDER-**